IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KRISTEN KENANNE SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-01418-CV-W-REL-SSA |
| | ) |
| CAROLYN COLVIN, Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Kristen Kenanne Sanders seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Title II of the Social Security Act ("the Act"). Plaintiff argues that (1) the Administrative Law Judge (ALJ) erred as a matter of law when he found that substance addiction was a material factor contributing to her disability; (2) the ALJ's residual functional capacity (RFC) is unsupported by the substantial evidence of record; and (3) the ALJ committed reversible error at step four of the sequential evaluation when he found that plaintiff could return to her past relevant work. I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

I. *COMMISIONER'S DECISION*

On May 13, 2011, plaintiff protectively filed her application for a period of disability and disability insurance benefits. Plaintiff alleged disability since May 28, 2010 (Tr. 159-74). Plaintiff alleged disability due to a combination of physical and mental impairments (Tr. 278). On September 13, 2011, plaintiff's claim was denied at the initial level (Tr. 78-84). On August 22, 2012, a hearing was held before the ALJ (Tr. 24-66). On August 28, 2012, the ALJ found that plaintiff was not under a "disability" as defined in the Act (Tr. 6-23). On October 11,

2012, the Appeals Council denied plaintiff's request for review (Tr. 1-5). Therefore, the August 28, 2012 decision of the ALJ stands as the final decision of the Commissioner.

## II.     STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id. Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

2

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

    Yes = disabled.
    No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.
    Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

>Yes = disabled.
>No = not disabled.

## IV. THE RECORD

The record consists of the testimony of plaintiff, medical expert Donna M. Veraldi, Ph.D., and vocational expert Amy L. Salva, M.Ed., and the documentary evidence admitted at the August 22, 2012 hearing.

### A. ADMINISTRATIVE REPORT

The record contains the following administrative report which shows that plaintiff earned the following income from 1997 to 2012:

| Year | Earnings | Year | Earnings |
|------|----------|------|----------|
| 1997 | $14,370.39 | 2005 | $ 160.00 |
| 1998 | 13,406.52 | 2006 | 382.50 |
| 1999 | 15,119.39 | 2007 | 5,125.80 |
| 2000 | 14,862.25 | 2008 | 14,756.73 |
| 2001 | 5,410.87 | 2009 | 24,641.20 |
| 2002 | 16,229.69 | 2010 | 6,209.21 |
| 2003 | 19,499.62 | 2011 | .00 |
| 2004 | 14,470.34 | 2012 | .00 |

(Tr. 213).

### B. SUMMARY OF MEDICAL RECORDS

As summarized by plaintiff on appeal, the medical record reflects diagnosis and treatment of multiple medical problems including affective, anxiety, and substance disorders.

### C. SUMMARY OF TESTIMONY

During the August 22, 2012 hearing, testimony was taken from plaintiff; Donna M. Veraldi, Ph.D., a medical expert; and Amy L. Salva, M.Ed., a vocational expert

1. **Plaintiff's Testimony**

Plaintiff testified that she was born on July 31, 1973, attended Northwest Missouri State University for one year, is left-handed, stands 5'7" tall, and weighs 240 pounds (Tr.27).

When questioned about her medical problems, plaintiff testified that she stopped working in May 2010 due to being sick and missing work. Plaintiff reported that she had anxious attacks and, depending on the work-related stress level, she experienced up to four anxiety attacks a day in 2010. Plaintiff related that the number of anxiety attacks decreased to three-to-five a month when she stopped working. Plaintiff described a history of passing out, which she attributed to anxiety. Plaintiff also testified that she suffers from depression (Tr. 37-40, 42-43, 44-45, 48-52). Plaintiff said that she underwent treatment for prescription-drug abuse in 2010, but received no drug treatment thereafter. Plaintiff denied abusing "street drugs" (Tr. 47-48).

In addition to her mental problems, plaintiff testified that she was diagnosed with Crohn's disease in March 2011, which causes diarrhea, constipation, and stomach and abdominal pains. Plaintiff reported that the Crohn's disease is aggravated by anxiety and stress (Tr. 40-42, 43, 52-55). Plaintiff complained of migraine headaches, but indicated that these respond to treatment (Tr. 55-57).

2. **Medical Expert's Testimony**

Donna M. Veraldi, Ph.D., a medical expert, testified at the request of the ALJ. The expert identified plaintiff's mental impairments as including a major depressive disorder, which is evaluated under Listing 12.04 on affective disorders; anxiety disorder, not otherwise specified (NOS), which is evaluated under Listing 12.06 on anxiety disorders; obsessive-compulsive

5

disorder, which is evaluated under Listing 12.08 on personality disorders; and opiate dependence, which is evaluated under Listing 12.09 on substance addiction disorders. The expert opined that, in combination and including her opiate dependence, plaintiff's mental impairments meet the severity requirements of Listing 12.09.

However, the expert went on to testify that plaintiff's impairments fail to meet the severity requirements of a Listing if her opiate dependence is removed from consideration. Absent the substance-abuse problem, the expert opined that plaintiff could perform at least simple, routine, and repetitive work. The expert opined that plaintiff's major social-functioning problems would occur if she worked either in a situation with a high level of interpersonal pressure or for a very demanding supervisor. Furthermore, the expert recommended that plaintiff avoid jobs that require attention to detail, that are subject to great time pressure, and that demand independent functioning.

### 3. Vocational Expert's Testimony

Amy L. Salva, M.Ed., a vocational expert, testified at the ALJ's request. The vocational expert classified plaintiff's past job of administrative assistant as sedentary and skilled (SVP 7); her retail salesperson position as light and semi-skilled (SVP 3); and her job as an order filler as medium and unskilled (SVP 2) (Tr. 61-62). Ms. Salva testified that plaintiff's past job of sewing machine operator was too dated to qualify as relevant past work (Tr. 62).

The ALJ posed a hypothetical question with a limitation to light work (Tr. 63). The hypothetical individual could perform a simple, routine, repetitive tasks with a SVP no higher than 3. The hypothetical individual could perform only stress-free jobs with no rigid quotas; no extremes changes in temperature; a controlled humidity; and no unprotected heights or dangerous machinery. The job would need to be performed in close proximity to a restroom. In response to this question, the expert opined that such a hypothetical individual could return to

plaintiff's past relevant work in retail sales (Tr. 63-64).

When the hypothetical was modified to include a need to use the bathroom two times during the workday on an unpredictable basis for 10-to-15 minutes each time, the expert responded that it would be difficult to have someone cover for the hypothetical (Tr. 64). Likewise, the expert opined that the hypothetical individual could not perform the retail sales position if she had unpredictable accidents due to Crohn's disease (Tr. 64-65).

The expert opined that a hypothetical individual performing plaintiff's past jobs would be permitted one sick day per month and an occasional vacation day, but not on a regular basis. Furthermore, the expert opined that if the hypothetical individual were either off-task for twenty percent of the time or required unscheduled breaks two-to-three times per week due to anxiety, such a person would be unable to do any of plaintiff's past jobs (Tr. 65).

## V.     FINDINGS OF THE ALJ

ALJ William G. Horne issued his decision on August 28, 2012. The ALJ found that plaintiff had not worked since May 28, 2010, the alleged disability onset date (Tr. 11). The ALJ found that plaintiff had the following severe impairments: affective, anxiety, and substance abuse disorders (Tr. 11). The ALJ found that plaintiff's impairments, including the substance abuse disorder, met the severity requirements of Listings 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.09 (substance abuse disorders) (Tr. 11-13).

However, the ALJ found, assuming plaintiff stopped abusing drugs, the impairments neither met nor equaled the severity requirements of any Listing (Tr. 13). The ALJ found that, if plaintiff stopped her substance abuse, she would be limited to light work; simple, routine, repetitive tasks with a SVP no higher than 3; a stress-free environment; with no temperature extremes; with controlled humidity; with no work at unprotected heights or around dangerous moving machinery; and a close proximity to a restroom (Tr. 14-17). The ALJ found that if

7

plaintiff refrained from illicit drugs, she would be able to return to her past relevant work in retail sales (Tr. 17-18). Accordingly, the ALJ concluded that plaintiff is not disabled. ((Tr. 18).

## VI.    ANALYSIS.

### A.    DRUG ADDICTION AND/OR ALCOHOLISM

Plaintiff first argues the ALJ erred by finding that her substance abuse contributes materially to her disability. Plaintiff maintains that there is no substantial evidence as to her disability status absent substance abuse, arguing that the ALJ improperly relied upon the medical expert to make a guess of what the plaintiff's RFC is without drug abuse.

Defendant responds that the ALJ based his finding that plaintiff retained the ability to perform based on (1) her substantial gainful activity after an earlier period of substance abuse ended, (2) her improvement in February 2011 after she was hospitalized and substance free, and (3) the testimony of the medical expert.

Alcoholism and drug addiction are not a basis for obtaining disability benefits. Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847 (amending 42 U.S.C. § 423(d)(2)); see also Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010), citing Pub.L. No. 104-121, 110 Stat. 852-56 (1996). This legislation provides that "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." P.L. No. 104-121 § 105(a)(1). P.L. No. 104-121 § 105(b)(1) (amending SSI disability benefits under Title XVI).

Drug addiction or alcoholism is "material" if the individual would not be found disabled if alcohol or drug use were to cease. 20 C.F.R. § 416.935, Brueggemann v. Barnhart, 348 F.3d 689, 694-95 (8th Cir. 2003) ("The plain text of the relevant regulation requires the ALJ first to determine whether Plaintiff is disabled. 20 C.F.R. § 404.1535(a) . . . The ALJ must

reach this determination initially . . ., using the standard five-step approach described in 20 C.F.R § 404.1520 without segregating out any effects that might be due to substance use disorders. . . . The inquiry here concerns strictly symptoms, not causes . . . If the gross total of a [plaintiff's] limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent.") (citations and footnote omitted).

When it is determined that plaintiff's remaining limitations are not disabling, "we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability" 20 C.F.R. § 416.935(b)(2)(i). If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability. Id at § 416.935(b)(2)(ii). In materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(c) or 1382c(a)(3)(J), the plaintiff bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. Kluesner, at 537.

I find that the ALJ cited medical evidence that contradicted plaintiff's testimony that drugs have not been a problem since 2010. For example, during her February 2011 hospitalization for substance-abuse detoxification, plaintiff described a significant problem with prescription-drug abuse including ingesting 100 Percocet in two weeks and taking her husband's Vicodin. The ALJ also noted plaintiff's statements that she "popped" from hospital to hospital to get prescriptions from their emergency rooms.

The ALJ observed that plaintiff described prescription-drug abuse beginning in 2005 and ending when her son was born. Taking the son's age at the time of the hearing, the ALJ calculated the end of the prescription-drug abuse to be 2007. The ALJ noted reports that plaintiff had been drug free from her son's birth until her mother-in-law's death in May 2010,

9

i.e., the same time she now alleges that disability began. The ALJ noted plaintiff's subsequent abuse of Vicodin on a daily basis and her efforts to acquire Dilaudid from various hospitals. Medical reports contained statements as to plaintiff's physical-withdrawal symptoms including crying fits, shakes, emesis, tachycardia, and diarrhea. When the ALJ compared plaintiff's work history to the reports of her admitted prescription-drug abuse, he found a correlation - plaintiff's posted income plummeted during the period of drug abuse but returned to normal levels when she became drug free. The ALJ inferred from this correlation that plaintiff's income fluctuation reflected the impact of drug abuse on her ability to be gainfully employed.

Finally, the ALJ cited the medical expert's testimony as to the relationship between plaintiff's prescription-drug abuse and her anxiety and depression.

In summary, I find that substantial evidence supports the ALJ's finding that plaintiff's prescription drug abuse materially contributes to her disability.

**B.     RFC**

Plaintiff next argues that the ALJ failed to properly assess her RFC. Plaintiff argues that while the ALJ based much of his RFC determination on the medical expert's testimony, the ALJ failed to include all of the medical expert's limitations.

In response, defendant argues that the ALJ is only required to include in the RFC those limitations that he or she finds are supported by the evidence;

An ALJ does not have to rely entirely on a doctor's opinion, nor is he or she limited to a simple choice of the medical opinions of record when he or she formulates the residual functional capacity. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [plaintiff's] physicians") (internal citations omitted). Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct

correspondence between a residual functional capacity finding and a specific medical opinion on the functional capacity in question."). The RFC assessment is specifically reserved to the Commissioner and the ALJ, not a plaintiff's doctors. The Commissioner uses medical sources to "provide evidence" about several factors, including residual functional capacity, but the "final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2).

An ALJ may make his own assessment based on his review of the record as a whole. Steed v. Astrue, 524 F.3d 872, 865 (8th Cir. 2008) (ALJ's residual functional capacity finding based upon diagnostic tests and examination results); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th Cir. 2010).

Plaintiff contends that the ALJ did not adequately include limitations in social functioning in the RFC.

In response, defendant argues that the ALJ's restriction to a stress free environment adequately addresses the social limitations that the ALJ found to be credible,

Finally, plaintiff argues that the ALJ did not include limitations due to her physical impairments, i.e., orthopedic conditions with lower extremity pain, Crohn's disease, and headaches.

Defendant responds that the ALJ found that the other physical impairments were not as severe as alleged, that plaintiff's treatment of the other physical impairments was pursued as an excuse to obtain prescription medication, and that the work-related limitations due to the other physical impairments were addressed by the light RFC with ready access to restrooms.

Plaintiff's ongoing and persistent pattern of drug-seeking behavior destroyed the credibility of her subjective complaints of pain. Slater v. Barnhart, 372 F.3d 956, 957 (8th Cir. 2004); Harvey v. Barnhart, 368 F.3d 1013, 1015 (8th Cir. 2004). To the degree that she has some abdominal symptoms such as diarrhea and emesis, by plaintiff's own report, these are

related to opiate withdrawal and, thus, not a basis for disability (Tr. 488). Nevertheless, the ALJ accommodated for this condition by finding that plaintiff would need to work in close proximity to a bathroom (Tr. 14). Similarly, plaintiff's headaches are attributable to her medication overuse and withdrawal (Tr. 790).

The administrative regulations do not require a plaintiff to be symptom-free in order to be found not disabled. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (the mere presence of a mental disturbance is not disabling *per se*, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity). Even though a plaintiff has been prescribed antidepressant drugs, this is not evidence that the mental impairment was disabling. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (prescription of antidepressant drugs does not show that the plaintiff is disabled).

An ALJ's decision should reflect a careful consideration of plaintiff's subjective complaints in light of the record as a whole when formulating the RFC. Wiese v. Astrue, 552 F.3d 728, 733-34 (8th Cir. 2009) (disagreeing with Wiese's contention that the ALJ's credibility findings were conclusory and insufficiently explained; noting a significant portion of the decision was devoted to a discussion of credibility, treatment history). Pain and mental limitations are a subjective experience, and in recognition of this fact, regulations require the ALJ to analyze the credibility of a plaintiff's subjective complaints of pain by assessing: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). See also Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000); 20 C.F.R § 416.928 .

An ALJ may consider a variety of factors when evaluating a plaintiff's credibility including work history. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir.1993) (plaintiff's credibility is lessened by a poor work

history).

The ALJ's finding that plaintiff is not credible is supported by substantial evidence as a whole.

Plaintiff argues that the ALJ should have supplemented the record by ordering consultative examinations.

An ALJ orders consultative medical examinations when the evidence as a whole is not sufficient to support a decision on a claim. 20 C.F.R. §§ 404.1519a(b) and 416.919a(b). Here, there was more than enough evidence to decide plaintiff's claim. Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005). The ALJ was not required to seek additional medical opinions under these circumstances. McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011) (noting that the duty to develop the record "is not never-ending and an ALJ is not required to disprove every possible impairment").

I find that the record is adequate to make a decision without the need for further development.

The RFC is consistent with the record as a whole.

## C. PAST RELEVANT WORK

Finally, plaintiff argues that the ALJ failed to make explicit findings regarding the physical and mental demands of plaintiff's past work and then compare those demands with plaintiff's RFC to determine whether plaintiff could perform the relevant duties.

Defendant responds that the ALJ properly relied upon the testimony of the expert regarding whether plaintiff could return to her past relevant rock.

At step four of the sequential evaluation process an ALJ may rely upon the testimony of a vocational expert regarding whether a plaintiff can return to her past relevant work. Wagner v. Astrue, 499 F.3d 842, 853-54 (8th Cir. 2007); Travis v. Astrue, 477 F.3d 1037, 1042-43 (8th Cir. 2007).

In the instant case, the expert classified plaintiff's work in retail sales as light and unskilled. The expert opined that plaintiff could return to this job based upon the hypothetical question as adopted. At the hearing, plaintiff's counsel was offered an opportunity to question the expert. While plaintiff's counsel inquired as to the effect of absenteeism, need for breaks, and need to stay on task, plaintiff's counsel did not challenge the expert's testimony as to ability to perform the retail sales job under the ALJ's RFC.

I find that the ALJ's finding that plaintiff could return to her past relevant work is supported by substantial evidence .

## VII.   CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

February 24, 2014
Kansas City, Missouri